1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JENNIFER ROSE O'NEAL,** | ) **NO. CV 15-2087-KS** |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **MEMORANDUM OPINION AND ORDER** |
| | ) |
| **CAROLYN W. COLVIN, Acting** | ) |
| **Commissioner of Social Security,** | ) |
| **Defendant.** | ) |
| _____ | ) |

## INTRODUCTION

Plaintiff filed a Complaint on March 20, 2015, seeking review of the denial of her application for disability insurance benefits ("DIB"). On December 11, 2015, the parties filed a Joint Stipulation ("Joint Stip.") in which plaintiff seeks an order reversing the Commissioner's decision and ordering the payment of benefits. (Joint Stip. at 31.) The Commissioner requests that the ALJ's decision be affirmed or, in the alternative, remanded for further proceedings. (*See id.* at 31-32.) On August 25, 2015, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 22, 23, 25.) The Court has taken the matter under submission without oral argument.

1

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

"On or about" October 17, 2011, plaintiff, who was born on November 15, 1965, filed an application for a period of disability and DIB.[1]  (*See* Joint Stip. at 2 ("Plaintiff filed this claim . . . on or about October 17, 2011"); *see also* Administrative Record ("AR") 26 ("On October 17, 2011, the claimant filed a Title II application"), 153 (plaintiff's application dated October 19, 2011).)   Plaintiff alleged disability commencing October 23, 2010, due to: herniated discs in her lumbar spine; degenerative disc disease; and fibromyalgia in back and neck.  (AR 169.)  Plaintiff previously worked as a child monitor (DOT 301.677-010), clerk (DOT 209.562-010), customer service clerk (DOT 299.367-010), and a purchasing agent (DOT 162.157-038).    (AR 36, 66-67, 170.)    The Commissioner denied plaintiff's applications initially (*id.* 82) and on reconsideration (*id.* 93).  On November 8, 2012, plaintiff requested a hearing.  (*Id.* 108.)  On August 5, 2013, Administrative Law Judge Lawrence Wheeler ("ALJ") held a hearing.  (*Id.* 43-71.)  Plaintiff, who was represented by counsel, and Ronald Hatakeyama, the vocational expert ("VE"), testified at the hearing.  (*Id.* 46-64, 64-70.)  On September 4, 2013, the ALJ issued an unfavorable decision, denying plaintiff's application for DIB.  (*Id.* 26-48.)  On January 26, 2015, the Appeals Council, after receiving additional evidence that it made part of the record, denied plaintiff's request for review.  (*Id.* 1-5.)

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2015 and had not engaged in substantial gainful activity from the

---

[1]  Plaintiff was 44 years old on the alleged onset date and thus met the agency's definition of a younger person.  *See* 20 C.F.R. § 404.1563(c).  In his decision, the ALJ acknowledged that, when plaintiff turned 45, she became a person who, according to the regulations may, in some circumstances, be more limited in her ability to adjust to other work than persons who have not attained age 45.  *See id.*; (*see also* AR 36).  On November 15, 2015, plaintiff became a person closely approaching advanced age.  *See* 20 C.F.R. § 404.1563(d).

alleged onset date of October 23, 2010.  (AR 28.)  The ALJ further found that plaintiff had the following severe impairments:  "degenerative disc disease of the lumbar spine and migraine headaches."  (*Id.*)  In reaching that determination, the ALJ noted that plaintiff had also reported:  "transient stomach problems . . . [that] did not persist;" a diagnosis of fibromyalgia, which the ALJ found was not a medically determined impairment because there was insufficient evidence to support the diagnosis; and the medically determinable impairments of depression and anxiety, which the ALJ found were not severe.  (*Id.* 28-29.) The ALJ concluded that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).  (*Id.* 30.)  The ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform sedentary work as follows:

> [Plaintiff] has the residual functional capacity to perform sedentary work . . . except with an option to alternate positions between sitting and standing at 30-minute intervals.  She can occasionally kneel, crouch, or crawl.  She cannot stoop.  She cannot climb ladders, robes, and scaffolds.  She can perform no more than occasional climbing of stairs and ramps.

(*Id.*)  The ALJ found that plaintiff was unable to perform her past relevant work as a child monitor (DOT 301.677-010), clerk (DOT 209.562-010), customer service clerk (DOT 299.367-010), and purchasing agent (DOT 162.157-038).  (*Id.* 36.)  However, the ALJ determined that there are jobs that exist in significant numbers in the national economy that plaintiff, given her age, education, work experience, and RFC, can perform, including the jobs of telephone information clerk (DOT 237.367-046) and addressor (DOT 209.587-101). (*Id.* 36-37.)  Accordingly, the ALJ determined that plaintiff had not been under a disability, as defined in the Social Security Act, from the alleged onset through the date of the ALJ's decision.  (*Id.* 37.)

1

2

**STANDARD OF REVIEW**

3

4   Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to

5   determine whether it is free from legal error and supported by substantial evidence in the

6   record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence

7   is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a

8   reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of

9   Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the

10   evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's

11   findings if they are supported by inferences reasonably drawn from the record." *Molina v.*

*Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

12

13   Although this Court cannot substitute its discretion for the Commissioner's, the Court

14   nonetheless must review the record as a whole, "weighing both the evidence that supports

15   and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v.*

16   *Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted);

17   *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ

18   is responsible for determining credibility, resolving conflicts in medical testimony, and for

19   resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

20

21   The Court will uphold the Commissioner's decision when the evidence is susceptible

22   to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.

23   2005). However, the Court may review only the reasons stated by the ALJ in his decision

24   "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at

25   630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not

26   reverse the Commissioner's decision if it is based on harmless error, which exists if the error

27   is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error,

28

4

1   'the agency's path may reasonably be discerned.'"  *Brown-Hunter v. Colvin*, 806 F.3d 487,

2   492 (9th Cir. 2015) (internal citations omitted).

3

4                                    **DISCUSSION**

5

6          Plaintiff alleges the following errors:  (1) the ALJ improperly weighed the medical

7   opinions; (2) the ALJ improperly evaluated plaintiff's subjective symptom testimony and

8   improperly characterized plaintiff's activities of daily living; (3) the ALJ erred in failing to

9   find that plaintiff met Listing 1.04; and (4) the ALJ erred in failing to find disability despite

10  his finding that plaintiff is limited to sedentary work and unable to stoop.  (Joint Stip. at 4-5.)

11  For the reasons discussed below, the Court finds that the ALJ improperly evaluated

12  plaintiff's subjective symptom testimony but did not commit the other errors alleged.

13

14  **I.       The ALJ Properly Evaluated The Medical Opinions.**

15

16          **A.  The Medical Opinions**

17

18          In determining plaintiff's RFC, the ALJ weighed three physicians' assessments of

19  plaintiff's impairments and limitations.  (*See* AR 35.)

20

21          First, Dr. Charles Combs, an internist and one of two State agency physicians who

22  reviewed plaintiff's medical records, opined on February 22, 2012 that plaintiff's RFC

23  limited her to light work with the following limitations:  she can lift and/or carry 20 pounds

24  occasionally and 10 pounds frequently; she can stand and/or walk, with normal breaks, for a

25  total of about 6 hours in an 8-hour workday; she can sit, with normal breaks, for a total of

26  about 6 hours in an 8-hours workday; she can engage in unlimited pushing and/or pulling

27  except as otherwise specified; she can occasionally climb ramps/stairs; she can never climb

28  ladders/ropes/scaffolds; she can occasionally perform balancing; she can occasionally stoop

(*i.e.*, bend at the waist), kneel, crouch (*i.e.*, bend at the knees), and crawl; and she should avoid concentrated exposure to extreme cold, vibration, and hazards.  (AR 77-79.)

Second, D. Chan, M.D., an internist and the second State agency physician to review plaintiff's medical records, opined on November 2, 2012 that plaintiff "is restricted to light RFC" with the same exertional, postural, and environmental limitations assessed by Dr. Combs.  (AR 88-90.)

Third, Dr. Kiumars Arfai, an anesthesiology and pain management specialist who, in concert with other doctors in his practice, provided pain management treatment to plaintiff for her back pain on a monthly basis from July 15, 2009 through October 23, 2013 (AR 424), opined on March 7, 2012 that plaintiff could:  occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk with normal breaks for less than two hours in an eight-hour workday; sit with normal breaks for less than six hours; and never climb, balance, stoop, kneel, crouch, or crawl.  (AR 334-35.)  Dr. Arfai added that plaintiff should avoid moving machinery and required "alternate standing and sitting," but he did not specify how often plaintiff required a change of position.  (*Id.* 335.)  Dr. Arfai indicated that MRIs supported his assessment of plaintiff's ability to stand and/or walk for less than two hours in an eight-hour workday.  (*Id.* 334.)  He did not indicate the medical findings supporting the other functional limitations he assessed.  (*See generally id.* 334-35.)

Dr. Arfai also repeatedly certified to the California Employment Development Department that plaintiff was unable to work.  In the first certification, dated April 13, 2011, Dr. Arfai opined that plaintiff "continues to have severe low back pain," "is unable to perform regular work," and is likely to be able to return to her regular or customary work in two months (*i.e.*, on June 20, 2011).  (AR 314, 303).  In a second certification, dated June 16, 2011, Dr. Arfai opined that plaintiff's disability began on the alleged onset date of October 23, 2010 and should end on July 27, 2011.  (*Id.* 311-12.)  In a third certification

dated August 3, 2011, Dr. Arfai opined that plaintiff "is unable to sit, stand, or walk for a long period of time – too painful" and estimated that plaintiff would be able to perform her regular or customary work in two months, *i.e.*, on October 3, 2011.  (*Id.* 322.)  In a fourth certification dated October 17, 2011, Dr. Arfai opined that plaintiff is "unable to sit, stand, or walk for a long period of time – too painful" due to her severe low back pain and disc herniation (*Id.* 276).  He estimated that plaintiff would be able to perform her regular or customary work in three months, *i.e.*, on January 17, 2012.  (*Id.* 276, 328.)

Plaintiff's primary care physician, Dr. Fei-Sen Yung with the Facey Medical Group, did not provide a medical source statement or other opinion regarding plaintiff's functional limitations and ability to work.

**B. The ALJ's Decision**

The ALJ evaluated the three medical opinions described above as follows:

Dr. Combs' and Dr. Chan's light finding is too permissive in light of the claimant's positive MRI findings and intermittently positive straight leg raises. It further does not sufficiently account for her combined pain. The environmental restrictions are overly restrictive, as there is nothing in the medical evidence supporting pain exacerbation with temperature changes or any medication side effects.  These aspects of these opinions are given minimal weight.  The postural findings, however, are consistent with the most consistent lower back pain, intermittent migraine headaches, and positive tenderness.  They also are consistent with the positive straight leg raises, noted for short-lived periods.  The postural restrictions are given significant weight . . . .

Dr. Arfai's work excuses are on an issue reserved to the Commissioner and are not well supported by the treatment record.  During his treatment, he only noted tenderness and positive facet loading, but no other physical findings.  The MRI results were also primarily consistent even to a period when the claimant was working.  Dr. Arfai's exertional [and] postural findings are not supported by his lack of physical findings, consistent medication prescriptions, and the claimant's noted improvement with injection treatment.  Her restriction from moving machinery does not appear to be based on any positive objective findings or even subjective allegations.  While the claimant reported pain, she did not report side effects and reported only short lived concentration problems.  His opinions are given minimal weight.

(AR 35.)   Ultimately, the ALJ determined that plaintiff could perform a wide range of sedentary work as follows:

[Plaintiff] has the residual functional capacity to perform sedentary work . . . except with an option to alternate positions between sitting and standing at 30-minute intervals.  She can occasionally kneel, crouch, or crawl.  She cannot stoop.  She cannot climb ladders, robes, and scaffolds.  She can perform no more than occasional climbing of stairs and ramps.

(AR 30, 36.)   Accordingly, the ALJ both adopted and discounted portions of all three medical opinions.

### C. Standard For Evaluating Conflicting Medical Opinions

The ALJ is required to articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another.  *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th

Cir. 2014).   Generally, the Commissioner gives more weight to opinions from treating physicians because these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of a plaintiff's medical impairments.   20 C.F.R. § 404.1527(c)(2).   Accordingly, if a treating source's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the medical record, that opinion is entitled to controlling weight.   *Id.*   If the treating source's opinion does not satisfy this standard, however, the following factors determine how much weight the opinion should receive:   the length of the treatment relationship and frequency of examination; the treating physician's knowledge of the impairments at issue; the extent to which the opinion is supported by treatment notes, laboratory findings, and supporting explanations; the consistency of the opinion with the record as a whole; and the treating physician's area of specialty.   20 C.F.R. § 404.1527(c). These same factors guide the ALJ's evaluation of the opinion of other medical sources, including those of State agency physicians.   *Id.* § 404.1527(e)(2)(ii).

Thus, an ALJ does not commit legal error *per se* by according greater weight to the opinion of a nonexamining State agency physician than to the contradictory opinion of a treating physician.   *See, e.g.*, *Morgan v. Comm'r of. Soc. Sec. Admin.*, 169 F.3d 595, 600-03 (9th Cir. 1999).   Instead, an ALJ is entitled to discount a treating physician's contradicted opinion when the ALJ articulates "specific and legitimate" reasons supported by substantial evidence for doing so.   *See Garrison*, 759 F.3d at 1012.   An ALJ can meet this standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."   *Id.* (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). ).   However, an ALJ may not make his own medical assessment beyond that demonstrated by the record.   *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975); *see also Morgan*, 169 F.3d at 601 (ALJ did not "substitute[] his own judgment for that of medical sources"); *Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir.

1    1999) (ALJ erred in rejecting physicians' opinions and finding greater residual functional

2    capacity based on claimant's testimony that he took a road trip).

3

4        **D. Analysis**

5

6        Plaintiff contends that the ALJ erred because he "ignores all of the actual medical

7    professionals to arrive at his own RFC" and "none of the ALJ's arguments," including his

8    arguments for discounting portions of the opinion of plaintiff's treating physician Dr. Arfai,

9    are supported by substantial evidence. (Joint Stip. at 25-26.) The Court disagrees.

10

11       First, as noted above, although the ALJ did not adopt the findings and opinions of one

12   medical source wholesale, he adopted the portions of each medical source's opinion that he

13   found were entitled to the most weight based on the factors listed above including, *inter alia,*

14   the extent to which they were supported by treatment notes, laboratory findings, supporting

15   explanations, and the record as a whole. Further, the ALJ articulated specific and legitimate

16   reasons for discounting some portions of the opinion provided by plaintiff's treating

17   physician.

18

19       Specifically, the ALJ observed that Dr. Arfai's exertional and postural findings – as

20   well as his work excuses – "are not well supported by the treatment record." This is a

21   specific and legitimate reason supported by the record for discounting portions of Dr. Arfai's

22   opinion. Although Dr. Arfai provided approximately four years of treatment notes, his

23   notes:  are both internally inconsistent and at odds with other portions of the case record;

24   they do not provide support for Dr. Arfai's March 7, 2012 medical source opinion; and they

25   contain large sections that appear to have been copied and pasted without regard for the

26   changes in plaintiff's circumstances, medications, and treatment regime.

27

28

For example, in July 2011, Dr. Arfai wrote that plaintiff's pain "has worsened in the last six months. The pain is about 10/10, intermittent, sharp, stabbing, and shooting mainly in the low back . . . She tried physical therapy for two to three weeks with minimal help. She has tried different medications with some help." (AR 293.) Dr. Arfai listed plaintiff's current medications as "Vicodin three to four 750 mg, ibuprofen 600 mg three to four, lorazepam 1 mg two to three a day, and amitriptyline one every day at 25 mg," and her "work/legal history" as "she is currently working as a pharmacy tech." (*Id.*) Dr. Arfai's physical examination revealed that plaintiff "is able to walk, toe walk, and heel walk without difficulty;" she has tenderness around the paraspinous muscles and "facet loading is positive;" her lower extremities show "normal strength, normal sensory, and normal reflexes." (*Id.* 294.) Dr. Arfai wrote that he gave plaintiff a "facet injection [that] seems to have helped," prescribed MSCONTIN, Percocet, and Soma, and advised her to do home based exercises or physical therapy. (*Id.*)

Five months later, in December 2011, Dr. Arfai's description of plaintiff and the status of her impairment remained the same. Following plaintiff's December 2011 treatment visit, Dr. Arfai again wrote that plaintiff's pain "has worsened in the last six months. The pain is about 10/10, intermittent, sharp, stabbing, and shooting mainly in the low back . . . She tried physical therapy for two to three weeks with minimal help. She has tried different medications with some help." (AR 280.) Dr. Arfai again listed plaintiff's current medications as "Vicodin three to four 750 mg, ibuprofen 600 mg three to four, lorazepam 1 mg two to three a day, and amitriptyline one every day at 25 mg," and her "work/legal history" as "she is currently working as a pharmacy tech." (*Id.*) His physical examination revealed that plaintiff "is able to walk, toe walk, and heel walk without difficulty;" she has tenderness around the paraspinous muscles and "facet loading is positive;" her lower extremities show "normal strength, normal sensory, and normal reflexes." (*Id.* 281.) Dr. Arfai wrote that he gave plaintiff a "facet injection [that] seems to have helped," prescribed

MSCONTIN, Oxycodone, and Soma, and advised her to do home based exercises or physical therapy.  (*Id.*)

Six months after that, in June 2012, Dr. Arfai again wrote that plaintiff's pain "has worsened in the last six months.  The pain is about 10/10, intermittent, sharp, stabbing, and shooting mainly in the low back . . . She tried physical therapy for two to three weeks with minimal help.  She has tried different medications with some help."  (AR 347.)  He listed her current medications as "Vicodin three to four 750 mg, ibuprofen 600 mg three to four, lorazepam 1 mg two to three a day, and amitriptyline one every day at 25 mg," and her "work/legal history" as "she is currently working as a pharmacy tech."  (*Id.*)  His physical examination revealed that plaintiff "is able to walk, toe walk, and heel walk without difficulty;" she has tenderness around the paraspinous muscles and "facet loading is positive;" her lower extremities show "normal strength, normal sensory, and normal reflexes."  (*Id.* 348.)  Dr. Arfai wrote that plaintiff reported "a 40% improvement since her last [visit]," he prescribed MSCONTIN, Oxycodone, and Soma, and he advised her to do home based exercises or physical therapy.  (*Id.*)

These excerpts illustrate the inconsistencies in Dr. Arfai's treatment notes and their lack of support for both his March 7, 2012 medical source opinion and his certifications to the Employment Development Department.  First, Dr. Arfai's statements about plaintiff's "current medications" – Vicodin, lorazepam, and amitriptyline – are different from his statements about what medications he is prescribing to her, *i.e.*, MSCONTIN, Oxycodone/Percocet, and Soma.

Second, Dr. Arfai consistently notes in 2011 and 2012 that plaintiff is working as a pharmacy tech, a statement that is inconsistent with both plaintiff's testimony (AR 46 (she last worked at Valencia pharmacy in October 2010)) and her certified earnings report (*id.* 155-59).  Further, it is difficult to reconcile Dr. Arfai's apparent belief that plaintiff was

working as a pharmacy tech throughout the alleged period of disability with his failure to advise plaintiff to either cease working or limit her physical exertion and his repeated certifications to the Employment Development Department that plaintiff was unable to work due to her pain.

Third, Dr. Arfai's physical examinations consistently revealed that plaintiff's ability to "walk, toe walk, and heel walk" was not impaired and that her lower extremities exhibited "normal strength, normal sensory, and normal reflexes," and there is no indication he identified any functional or physical limitations.  Further, in his March 7, 2012 medical source statement, Dr. Arfai provided approximately 16 opinions regarding plaintiff's functional limitations but provided a supporting explanation for only one – his opinion that plaintiff can stand and/or walk for less than two hours in an eight-hour workday, which Dr. Arfai stated was supported by "MRIs."  (AR 334-35.)

The Ninth Circuit has repeatedly held that an ALJ may properly reject a treating physician's opinions where the physician's conclusions do not "mesh" with his objective data or history, *see, e.g.*, *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir.2001), and "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings."  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) ("discrepancy" between treating physician's assessment and clinical notes is a clear and convincing reason for not relying on the doctor's opinion).  In light of the defects in Dr. Arfai's treatment notes, his minimal objective findings, and his failure to support 15 of his 16 opinions regarding plaintiff's functional limitations with supporting explanations, the Court finds no error with the ALJ's decision to accord minimal weight to Dr. Arfai's opinion and only adopt those portions of Dr. Arfai's opinion that are consistent with the record as a whole.

## II. **The ALJ Improperly Evaluated Plaintiff's Credibility.**

### A. Plaintiff's Testimony

Plaintiff further contends that the ALJ erred in discounting plaintiff's subjective symptom testimony.  Plaintiff testified at the August 5, 2013 hearing that, although she was laid off from her last job as a pharmacy tech in October 2010, she would not have been able to continue performing that job because her back had gotten worse, she had missed three or four days of work in the month before she was laid off, and her doctor had advised her not to lift more than 15 pounds.  (AR 48-49, 58.)

Plaintiff testified that she is "in pain all the time" (AR 55; *see also id*. 191 (in pain "constantly")) and wakes up multiple times at night because of the pain (*id*. 58 (three to four times per night); *see also id.*195 (four to five times per night)).  She testified that, on a scale of 1 to 10, her pain level is generally around an 8.  (*Id.* 59; *see also id.* 192.)  In order to address her pain, plaintiff stated that she rests for 30-45 minute intervals, does physical therapy, uses heat and a brace or corset, and takes both prescription and non-prescription medications, including Soma, morphine sulfate, and Oxycodone.  (AR 193.)  However, plaintiff stated that these pain management measures did not eliminate her pain completely.  (*Id.* 194.)

In her May 14, 2012 function report, plaintiff stated that she:  has to take "a lot of breaks" in order clean even "a quarter" of her house; sometimes needs help shaving her legs and putting on her socks and shoes; is able to vacuum with breaks; and has a hard time getting in and out of her car.  (AR 194-95, 199.)  Plaintiff testified at the hearing that she also needs help reaching for things on a shelf, occasionally needs help getting dressed, experiences pain going up stairs, is unable to bend over or squat, and has difficulty washing her hair.  (*Id.* 60-61; *see also id.* 198.)

14

When asked how she spends an average day, plaintiff testified: "I sit. I stand a lot. I sit a lot, but in spurts. I have to move around. I can't – if I'm sitting for more than 10, 15 minutes, I have to stand up." (AR 54.) When pressed further, plaintiff added that she: drives her daughter to school twice a week; reads and watches some TV – about two hours per day according to the May 14, 2012 function report (AR 199); spends about 10-15 minutes a day on the computer; goes grocery shopping with one of her adult children – but not on a daily basis – and, while shopping, limits herself to pushing the cart and lifting items that weigh no more than a gallon of milk; goes to the park sometimes and visits her elderly mother; fixes "small light meal[s]" independently and more complex meals with help; and receives a monthly epidural from Northridge Pain Management (Dr. Arfai's practice), which "takes the edge off" but does not stop the pain completely. (AR 55-56, 60-61; *see also id.* 197, 199.) With regards to cooking, plaintiff testified that she cooks meals by taking breaks every 10-15 minutes with each break lasting approximately 10 minutes. (*Id.* 57.) "If I do pasta, I put the water on the stove. I'll go sit down. Then I'll come back. I'll put the pasta in, I'll go sit down." (*Id.*) Similarly, when sitting to watch TV or read, plaintiff stated that she keeps her legs up and puts a heating pad on her back. (*Id.* 59.) Plaintiff also stated that, approximately three to four times per year, she is bedridden for a two-week period because her back goes out. (AR 198.)

Plaintiff estimated that she could sit for no longer than 10 to 15 minutes at a time (AR 49; *but see id.* 192 (estimating on her May 14, 2012 function report that she could sit for up to 60 minutes at a time)) and for no more than a total of two hours in an eight-hour workday (AR 63). Plaintiff also testified that she could: walk for no more than 15-20 minutes at a time (AR 62; *but see id.* 192 (estimating on her May 14, 2012 function report that she could walk for 30-45 minute intervals)); and walk or stand for a total of one hour in an eight-hour workday (AR 63; *but see id.* 192 (estimating on her May 14, 2012 function report that she could stand for no more than a 45 minute interval)). Plaintiff also estimated that she could lift no more than 10 pounds from the floor or overhead. (AR 192.)

**B.  Standard For Evaluating Plaintiff's Credibility**

An ALJ must make two findings before determining that a claimant's pain or symptom testimony is not credible.  *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014).   "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036).  "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms" and those reasons must be supported by substantial evidence in the record.  *Id.*; *see also Marsh v. Colvin*, 792 F.3d 1170, 1174 n.2 (9th Cir. 2015).  The ALJ must "specifically identify the testimony [from the claimant that] she or he finds not to be credible and . . . explain what evidence undermines the testimony."  *Treichler*, 775 F.3d at 1102 (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)).  "General findings are insufficient."  *Brown-Hunter*, 806 F.3d at 493 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).  Further, "subjective pain testimony cannot be rejected on the *sole* ground that it is not fully corroborated by objective medical evidence."  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (emphasis added) (citation omitted).

**C. Discussion**

The ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms and made no determination of malingering but nevertheless concluded that plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely credible."  (AR 31.) The ALJ cited the following reasons for his adverse credibility determination:  (1) plaintiff attested to some activities of daily living that are greater than one would expect for a totally

16

disabled individual, *i.e.*, taking her adult daughter to school twice a week, watching television for two hours a day, shopping with one of her daughters, visiting her mother, preparing small light meals, using a computer, cleaning with help or breaks, dusting, vacuuming, and driving; (2) there are inconsistencies in the record, namely that plaintiff testified that she started missing work right before she was laid off due to her back impairment but the medical record contains only one visit prior to the alleged onset date related to back complaints "and no additional back treatment for several months"; and (3) "[plaintiff's] treatment is not what one would expect for a totally disabled individual" because she received only conservative treatment and had minimal objective findings.  (AR 31-34.)

### 1.  Plaintiff's Daily Activities.

The ALJ's first reason for finding plaintiff's testimony less than credible – her allegations of total disability were inconsistent with her self-reported daily activities – is not a clear and convincing reason supported by substantial evidence.  A claimant's daily activities bear on her credibility only if the level of activity is inconsistent with her claimed limitations.  *See Reddick*, 157 F.3d at 722.  Thus, an ALJ may rely on a claimant's daily activities to support an adverse credibility determination only when those activities either: "contradict [claimant's] other testimony"; or "meet the threshold for transferable work skills" – that is, where the plaintiff "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting."  *Orn*, 495 F.3d at 639; *Smolen v. Chater*, 80 F.3d 1273, 1284 n. 7 (9th Cir. 1996).  Plaintiff's daily activities, which the ALJ described as taking her adult daughter to school twice a week, watching television for two hours a day, shopping with one of her adult daughters, visiting her mother, preparing small light meals, using a computer, cleaning with help or breaks, dusting, vacuuming, and driving, are not inconsistent with her other testimony and do not meet the threshold for transferable work skills.  *Cf. Vertigan v. Halter*, 260 F.3d 1044, 1050

(9th Cir. 2001) ("mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability"); *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."). Accordingly, the ALJ erred in citing plaintiff's daily activities as a reason for his adverse credibility determination.

## 2. Plaintiff's Treatment.

The ALJ's second reason for finding plaintiff's testimony less than credible – the conservative nature of her treatment relative to her allegations of disabling pain[2] – is also not a clear and convincing reason supported by substantial evidence. Plaintiff's treatment consisted of monthly epidurals, physical therapy, and a combination of prescription and non-prescription medications. Although physical therapy may constitute conservative treatment, both the Ninth Circuit and this Court have declined to characterize epidural injections as conservative medical treatment for the purposes of evaluating a claimant's credibility. *See, e.g.*, *Garrison*, 759 F.3d at 1015 & n.20; *Hydat Yang v. Colvin*, No. CV 14–2138–PLA, 2015 WL 248056, at *6 (C.D. Cal. Jan. 20, 2015) ("This Court has previously found that spinal epidural injections are not 'conservative' treatment." (citing *Harvey v. Colvin*, No. CV 13–5376–PLA, 2014 WL 3845088, at *9 (C.D. Cal. Aug.5, 2014)). Further, although the medical records indicate that plaintiff received some relief from the epidurals, the record as a whole shows that her relief was short-lived and plaintiff continued to receive an epidural on a monthly basis for years without meaningful improvement. Accordingly, the ALJ erred in

---

[2]   A plaintiff's favorable response to conservative treatment undermines plaintiff's statements about the disabling nature of his pain. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008); *see also Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) ("evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment").

citing plaintiff's "conservative treatment" as a reason for his adverse credibility determination.

### 3.  The Objective Medical Evidence.

The ALJ also cited the minimal objective medical findings to support his adverse credibility determination.  Substantial evidence supports the ALJ's conclusion that plaintiff's numerous x-rays, MRIs, and the results of her physical examinations do not support her allegations of disabling pain.  As stated above, Dr. Arfai's physical examinations during the alleged period of disability consistently revealed that plaintiff retained an unimpaired ability to "walk, toe walk, and heel walk" and that her lower extremities exhibited "normal strength, normal sensory, and normal reflexes."  Further, the MRI of her back in September 2010, just a month before the alleged onset date, showed that plaintiff's disc protrusions and nerve impingement were "unchanged" from her condition in June 1, 2009, when she was engaged in substantial gainful activity.  (AR 274-75.)  The results of a subsequent MRI, conducted 18 months later on March 12, 2012, were similar.  (*Id.* 337.)  Finally, nerve conduction studies conducted on January 11, 2011, a few months after the alleged onset date, found no indication of peripheral nerve entrapment, lumbrosacral radiculopathy or entrapment neuropathy and plaintiff's "peroneal, tibial, and sural nerves" showed normal motor distal latencies and normal sensory latencies.  (*Id.* 320.)  Although the dearth of objective medical evidence to support plaintiff's allegations of disabling pain can be a clear and convincing reason for an ALJ's adverse credibility determination, a plaintiff's "subjective pain testimony cannot be rejected on the *sole* ground that it is not fully corroborated by objective medical evidence."  *Rollins*, 261 F.3d at 857 (emphasis added).  Accordingly, in order for his adverse credibility determination to stand, the ALJ's final reason for finding plaintiff's testimony less than fully credible must be clear and convincing and supported by substantial evidence.

1

2

### 4.  Discrepancy Between Plaintiff's Testimony And Treatment Record.

3

4

The ALJ's final remaining basis for his adverse credibility determination is his conclusion that there were inconsistencies between plaintiff's testimony about the onset of her disability and her dates of treatment. Specifically, the ALJ stated that there was a discrepancy between plaintiff's testimony that, due to her back impairments, she started missing work before she was laid off in October 2010, and the medical record, which reflected only one treatment visit related to back complaints prior to the alleged onset date. However, the record shows that, in the three months before the alleged onset date, plaintiff went to both her primary care physician's office (AR 232-33 (August 2, 2010 visit)) and the emergency room complaining of back pain (*id.* 240-43 (August 31, 2010 visit), and she received an MRI of her back following a referral from her pain management specialist (AR 274 (September 20, 2010 MRI)).

5

6

7

8

9

10

11

12

13

14

15

Thus, the record shows that the frequency of plaintiff's treatment for back pain *increased* during the three months prior to the alleged onset date, and that increase is consistent with plaintiff's testimony that, "right before" her layoff in October 2010, her back "started getting quite a bit worse to where [she] was missing work."  Accordingly, the ALJ erred in characterizing plaintiff's treatment record as being inconsistent with plaintiff's testimony and, thus, his final reason for finding plaintiff's testimony less than fully credible is not supported by substantial evidence.

16

17

18

19

20

21

22

23

### 5.  Conclusion

24

25

The ALJ failed to provide legally sufficient reasons supported by substantial evidence to support his adverse credibility determination.  Therefore, the matter must be remanded for reconsideration of plaintiff's credibility in conformity with the governing legal standards.

26

27

28

20

III.   **The ALJ Properly Concluded That Plaintiff Does Not Have An Impairment That Meets Or Medically Equals The Severity Of Listing 1.04.**

The third issue in dispute is whether the ALJ erred in failing to find that plaintiff is disabled because her impairments met or equaled Listing 1.04.  Listing 1.04 states, *inter alia*, that a person is disabled if she has a disorder of the spine resulting in compromise of a nerve root or spinal cord with:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

(Joint Stip. at 7-8.)

Plaintiff contends that her impairments satisfy this definition because "plaintiff had multiple MRI reports which showed nerve root impingement" and "[t]he record is also replete with positive straight leg tests."  (Joint Stip. at 7.)  However, plaintiff does not also contend that the record shows that plaintiff experienced "limitation of motion of the spine, [and] motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss."  (*See generally id.* at 7-8.)  Further, as emphasized above, Dr. Arfai's physical examinations during the alleged period of disability consistently revealed that plaintiff retained an unimpaired ability to "walk, toe walk, and heel walk" and that her lower extremities exhibited "normal strength, normal sensory, and normal reflexes."  Because plaintiff has not alleged that plaintiff's impairments caused muscle weakness and either sensory or reflex loss and the record would not support such an allegation, plaintiff has failed to carry her burden of showing that her impairments met or equaled Listing 1.04.

21

**IV.**    <u>**The ALJ Did Not Err In Finding That Plaintiff Could Perform Sedentary Work**</u>
<u>**Despite Her Inability To Stoop.**</u>

Plaintiff's final contention is that Social Security Ruling ("SSR") 96-9p mandates a finding of disability because it states that a finding of disability "would usually apply" to an individual who is limited to "unskilled sedentary work" and unable to stoop.  (Joint Stip. at 5.)  Below is the relevant portion of SSR 96-9p:

> An ability to stoop occasionally; *i.e.,* from very little up to one-third of the time, is required in most unskilled sedentary occupations.  A complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply, but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work.  Consultation with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping.

SSR 96-9p also states that, in complex cases, an ALJ may ask a VE to provide any or all of the following:  "[a]n analysis of the impact of the RFC upon the full range of sedentary work, which the adjudicator may consider in determining the extent of the erosion of the occupational base[;] examples of occupations the individual may be able to perform[;] and citations of the existence and number of jobs in such occupations in the national economy."

The Commissioner correctly points out that the ALJ consulted with a VE about the existence and number of jobs in the national economy that plaintiff would be able to perform.  (*See* Joint Stip. at 6-7.)  Specifically, the ALJ asked the VE whether there are jobs in the national economy that a hypothetical person with plaintiff's education and work experience could perform if she:  was limited to sedentary work exertion; required the option

to alternate sitting and standing every 30 minutes; could occasionally kneel, crouch, crawl, climb stairs and ramps; and could perform "no stooping" or climbing ladders, ropes, or scaffolds.  (AR 67.)  The VE answered that plaintiff could perform the job of telephone information clerk (DOT 237.367-046) and the job of addresser in the clerical industry (DOT 209.587-010), and there are approximately 250,000 and 96,000 of these jobs in the national economy, respectively.  (*Id.* 67-68.)  Plaintiff's attorney asked the VE several questions about how other limitations would affect his testimony but did not ask about SSR 96-9p or confirm with the VE that neither the job of telephone information clerk nor the job of addresser would require stooping.  (*See generally id.* 68-70.)  Plaintiff's attorney does not now argue that the VE's testimony was inconsistent with the DOT, and there is no obvious conflict between the VE's testimony and the DOT.[3]

The ALJ is entitled to rely on the DOT's description of the requirements for each listed occupation and on VE testimony about the specific occupations that the plaintiff can perform.  *See Zavalin v. Colvin*, 778 F.3d 842, 845-46 (9th Cir. 2015); *see also Osenbrock v. Apfel*, 240 F.3d 1157, 1163 (9th Cir. 2001) (testimony of a VE constitutes substantial evidence).  These are designated sources of "reliable job information."  *See* 20 C.F.R. § 404.1566(d)-(e); *Bayliss*, 427 F.3d at 1218 (ALJ may rely on "any reliable job information," including the testimony of a VE); *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).  Accordingly, in the absence of any apparent conflict between the VE's testimony and the DOT, the ALJ did not err by relying on the VE's testimony that an individual with plaintiff, despite her inability to stoop, could perform jobs that existed in significant numbers in the national economy.

---

[3]   When there is an apparent conflict between the VE's testimony and the DOT, the ALJ is required to reconcile the inconsistency before relying on the VE's testimony.  *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015).  An ALJ may choose to accept testimony from a VE that contradicts the DOT if the record contains "persuasive evidence to support the deviation."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir.1995)).

**V.      Remand For Further Proceedings Is Appropriate.**

For the reasons stated above, the Court finds that the ALJ erred in one respect:  he failed to properly evaluate plaintiff's subjective symptom testimony.  Because plaintiff contends that the ALJ's error warrants the immediate award of benefits, the Court considers whether the "credit as true" rule applies.

"The touchstone for an award of benefits is the existence of a disability, not the agency's legal error." *Brown-Hunter*, 806 F.3d at 495.  Accordingly, a reviewing court is not required to credit as true a claimant's allegations merely because the ALJ made a legal error in discrediting them. *See id.* (citing *Treichler*, 775 F.3d at 1106).  Instead, a remand for an immediate award of benefits is appropriate only in "rare circumstances," and, before ordering that extreme remedy, the Court must satisfy itself that:  (1) the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence; (2) the record is fully developed and free from conflicts and ambiguities with all essential factual issues resolved so that further administrative proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015).

However, even if those three requirements are met, the Court retains "flexibility" in determining the appropriate remedy. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (quoting *Garrison*, 759 F.3d at 1021).  "In particular, [the Court] may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" *Id.* (quoting *Garrison*, 759 F.3d at 1021).

24

This case does not present the "rare circumstances" in which, despite the ALJ's legal error, the claimant affirmatively established the existence of a disability and additional administrative proceedings would serve no useful purpose. Accordingly, an award for benefits is not appropriate at this time, and the matter must be remanded for further proceedings consistent with this opinion and order. In addition to reevaluating plaintiff's subjective symptom testimony on remand, the ALJ may also need to solicit additional medical and vocational evidence due to the passage of time and plaintiff's transition into the category of "person closely approaching advanced age."

## CONCLUSION

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: March 11, 2016

KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE